The R. & J. Furniture Company v. Commissioner.
R. & J. Furniture Co. v. Commissioner
Docket No. 30251.
United States Tax Court
T.C. Memo 1956-204; 1956 Tax Ct. Memo LEXIS 89; 15 T.C.M. (CCH) 1058; T.C.M. (RIA) 56204; August 31, 1956
*89 Ernest H. Cohen, Esq., and John Wiseman, C.P.A., 405 Laconia Building, Wheeling, W. Va., for the petitioner. James F. Kennedy, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This case, originally reported at , is here on remand from the Court of . At the hearing pursuant to mandate additional evidence was introduced on the only question now remaining, namely, what is the proper amount to be allowed as a deduction in the base period years as reasonable compensation to the two partners of petitioner's predecessor partnership for the purpose of computing base period net income upon which petitioner's excess profits tax credit is based. Findings of Fact Some of the facts have been stipulated and are hereby found. Petitioner, incorporated on May 29, 1940 under the laws of Ohio, succeeded, as of June 1, 1940, to the retail furniture business conducted in Canton, Ohio, by the R. & J. Furniture Company, a partnership organized on April 11, 1932 and composed of two partners, Reuben F. Jacobson and Bennie Rudner. The partnership agreement provided *90 that Jacobson should devote his entire time to the business, for which he should draw from the profits of the firm $50 each week as compensation, and that Rudner should not be required to devote his time to the conduct of the business but should act as an adviser to the business, for which he should be paid as wages out of the profits $20 per week. After deducting these "wages," which were subject to change by mutual consent, the partnership profits were to be divided equally between Jacobson and Rudner. Jacobson, who was 36 years old in 1936, had been in the retail furniture business for about 9 years prior thereto. Both before 1936 and during the base period years 1936 through 1939 he managed the partnership business, supervising the merchandising, sales and general operations. He devoted a great deal of his attention to the advertising campaigns of the partnership. Rudner, who was about 50 years old in 1936, had been in the retail furniture business about 26 years prior thereto. During the base period years he served the business mainly as an adviser. Two or three days each month he would make the trip from Martins Ferry to Canton, Ohio, where the business was located, to discuss *91 with Jacobson administrative matters and lines of merchandise in connection with the buying. In addition the partners had occasional telephone talks and Jacobson would make two or three trips a year to Martins Ferry to discuss business matters with Rudner. Jacobson made one or two trips a year to buy merchandise, an important activity of the business, and Rudner accompanied him about one-third of the time. The major responsibility for buying merchandise, however, rested on Jacobson. The net income or loss (including "wages" paid pursuant to the partnership agreement) of the partners from the partnership business from 1932 through 1935 was as follows: Year
Jacobson
Rudner
1932
($10,425.99)
($10,426.00)
1933
8,501.79
7,146.79
1934
11,018.92
10,313.92
1935
23,670.93
24,675.93
The amount paid to each of the partners during the base period years as "wages" pursuant to the partnership agreement were as follows: Year
Jacobson
Rudner
Total
1936
$3,720.00
$1,900.00
$5,620.00
1937
5,233.33
1,308.32
6,541.65
1938
5,200.00
1,300.00
6,500.00
1939
5,200.00
1,300.00
6,500.00
During the base period years the City of Canton *92 and its surrounding trading area was primarily a center of steel production and fabrication. In 1936 the community generally was recovering from a depression and in 1937 considerable industrial strife affected business adversely. This depressed period lasted until the latter part of 1938, when business began picking up and continued to improve in 1939. Net sales and profits before distributions to the partners of the partnership for the base period years, and net sales and profits before payment of officers' salaries and Federal income taxes of petitioner for 1941 through 1945 were as follows: Year
Net Sales
Net Profits
1936
$333,452.19
$ 79,277.20
1937
404,336.41
62,280.06
1938
265,920.93
19,858.54
1939
437,214.26
79,757.48
1941
683,104.34
193,899.64
1942
478,288.72
169,965.62
1943
393,762.16
83,596.67
1944
471,228.99
80,512.23
1945
510,467.70
59,602.58 The "net profits" for 1942 through 1945 are based upon adjusted net income per return as further adjusted for the permitted items in the notice of deficiency, and adding the salaries payable to Jacobson and Rudner. The salaries paid by petitioner to Jacobson and Rudner, as secretary-treasurer *93 and president, respectively, for each of the years 1941 through 1945, were $25,833 and $10,000, respectively. These salaries were authorized in April 1941 by petitioner's board of directors. Among the factors considered by the board in authorizing these salaries were the expansion of business facilities, the upward trend of the volume of business, and the expectation that volume and profits in 1941 and later years would continue to increase. The type of duties and activities of Jacobson and Rudner were basically the same during these years as during the base period years, but there were increases in the business during the later years and complexities brought on by war conditions. After 1941 petitioner no longer operated a used furniture department which had been operated by the partnership during the base period years. On its excess profits tax returns for 1941, 1942 and 1943, petitioner, assuming the status of an "acquiring corporation," reduced the base period net income of its predecessor partnership by $35,833 to represent the adjustment for "officers' salaries." These returns, signed on behalf of petitioner by Jacobson, were prepared by petitioner's accountant. The amounts *94 deducted as "officers' salaries" were the same as the amounts being paid Jacobson and Rudner by petitioner at the time the returns were prepared. When he signed the returns Jacobson was not aware of the significance of the salary adjustments, nor was the significance or amount of these deductions ever discussed by the accountant with Jacobson or with other directors or officers of petitioner. Subsequently petitioner filed claims for refund with respect to excess profits taxes paid for each of these years and claimed an adjustment with respect to the "officers' salaries" indicated in the returns. Reasonable compensation for services payable to Jacobson and Rudner together totaled not more than $17,000 for each of the base period years. Opinion When this case was first decided the present question was one of the issues. The holding was in favor of respondent on the ground that petitioner had failed to sustain its burden of proof. . This decision was reversed (C.A. 6) , with leave to the parties to introduce evidence on the question of reasonableness of officers' salaries to be allowed during the base period to the predecessor *95 partnership. This is the only controversy now before us. We have carefully examined the record and all of the evidence. As a result, and relying partly upon testimony with respect to an apparently comparable company, we have found as a fact that reasonable salaries to be paid as a total to the two partners were not in excess of $17,000 for each of the base period years. Since on that finding respondent cannot succeed we consider it unnecessary to be more specific. [1] On the only issue before us petitioner is sustained. Decision will be entered under Rule 50. Footnotes
1. Opening statement of counsel for respondent: "It should probably be called to the Court's attention, however, that when considering the proper amount when it comes down to making the court's determination, if the court would be of the opinion that the salaries should be anything less than, say, $17,000, it would not be necessary to be too precise because below that amount there is no excess profits tax liability. It is only within the area of $17,000 up to the $35,000 which was the amount originally computed in the excess profits tax returns filed by the Petitioner that tax is involved."↩